Next case is Southern States Marketing v. Color Me Mine Enterprises, 2011-1377. Miss Herron will be ready when you are. I don't see your name on the briefs. Are you with the same law firm? I am, Your Honor. Please proceed. May it please the Court, my name is Kelly Herron and I represent Southern States Marketing, a toy manufacturer out of Marietta, Georgia. Southern States desires to register its trademark for toy goods, a line of fabrics, purses and bags which bear a black line art design which a child would color in with permanent markers which come with each set. The trademark board unfortunately sustained the opposition and we appealed because the trademark board's opinion disregarded applicable law and is based on erroneous facts. Of course, your basic problem is that the names of the two marks are the same. That's correct, yes, Your Honor. But as explained in our brief, it's a highly suggestive mark and that's why I think it appealed to both parties. Color Me is inherently derived from the use. It's not an arbitrary or fanciful name. It's a highly suggestive name and we submitted in the record a voluminous number of third party registrations and applications where other parties have filed to register for Color Me and their names in a similar context. Even some evidence of actual confusion wasn't there. No, Your Honor, not at all. Actually, the one instance that CMM Enterprises points to is one lady, a grandmother, who her granddaughter called her on the phone. Nothing wrong with grandmothers. I'm sorry? Nothing wrong with grandmothers. Oh, no, and I don't mean to infer that whatsoever by my tone and I apologize. But the answer wasn't no, Your Honor, but no, yes, but. Correct. There was an actual instance, wasn't there? Your Honor, but it doesn't constitute an instance of actual confusion under the law and that's explained in my brief. This lady, who happened to be a respectable grandmother and a very nice lady, her granddaughter called her on the phone and asked for a Color Me Mine bag for Christmas. This lady had never seen the bag. She had never been able to assess the relatedness and she searched for the bag in the marketplace at Wal-Mart and different places, was unable to find it, and so she started a search on the Internet. She did a Google search and CMM Enterprises Ceramic Studios came up. She said she doubted there was any relationship. However, nonetheless, because she was desperate to find the bag, she nonetheless called this pottery studio. Your Honor, the case cited in my brief says when an individual wonders about a possible relationship, that's not sufficient evidence of an instance of actual confusion. So therefore, CMM Enterprises has not. Isn't her making the call and looking up and finding out that this was a pottery functional store, isn't that more than just relatedness? I mean, isn't that relatedness there? No, Your Honor, and the question there is relatedness is applicable law. She took a further step in making the call. She did. She probably thought, well, you know, they make ceramic figures, perhaps they make bags too. Well, Your Honor, and that goes back to, she maybe at most wondered if there was a possible relationship, and the law cited in my brief says, well, if the most you can point at is one person possibly wondering about a relationship, that does not constitute... Isn't making the call more than wondering? Isn't that a step further? Your Honor, I would say it's actually less because of her state of mind, as explained to her in her deposition. She says she doubted there was any relationship. The only reason she called it, that was the only Color Me Mine name out there that she could actually find. It was a call made out of desperation, and I believe... And the problem is that nobody else is using Color Me Mine. That's why she couldn't find it. There's no evidence that anybody other than these two parties was using Color Me Mine for anything, right? Correct, Your Honor, but I've listed in my brief many, many instances where parties might have identical names, yet are held to be, there's no likelihood of confusion. At this point... No, but in terms, you have all this evidence about the use of the term Color Me, which doesn't seem to me to be very significant because it's not the same trademark term. That's right, Your Honor. However... Why isn't that sort of very weak evidence about usage and the possibility of confusion? There is this pronoun at the end of the name, and that is true. However, when faced, the pronoun mine or me or your, it's a highly suggestive term in itself that must be considered a weak term. As pointed out in my brief, the trademark board, when assessing whether the word your, a pronoun, placed in a mark at the end of a mark was suggestive, the trademark board held it was highly suggestive. That's in the N. Ray Redian case that's cited in my brief. Also, Mr. Mark Tasman, who is the president of Southern States, he explained in his deposition that pronouns such as me and mine are widely used in the craft industry in general. He's had 27 years of experience in crafts and toys, and it's just a highly suggestive word signifying personalization. I notice you keep referring to my brief, but I don't see your name on it, but I guess that's not our business. Well, that's all right. I actually did write it, and it was edited by Mr. Slagle, and then we decided that I would appear for oral hearing. It should be labeled new me, labeled new mine. Your Honors, an important part of our argument here is with respect to the channels of trade argument. Southern States, or I'm sorry, CMM Enterprises Services and Southern States Goods, will never be sold through the same stores or venue. That is because CMM Enterprises Services are sold out of its own pottery studios. That's clear from its registration, and it's clear from the evidence. And, in fact... It's the same mall. It's the same mall. But, Your Honor... How about the Internet? Any Internet sales or what? Respectfully, Your Honor, what business doesn't advertise over the Internet now? If that is going to now be the standard, that defies the liberal intent of the Trademark Act, and then the law would have to hold that every business out there trades in the same channel, because all businesses sell on the Internet or have websites. Both these businesses involve coloring or painting various objects. Boy, those aren't really different. I mean, you can say one's a product and one's a service and make other distinctions, but... Yes, Your Honor. We review the PTO on a substantial evidence basis. That's right, Your Honor. But, please note that the Trademark Trial and Appeal Board did not cite one case to explain its holding. There's no case where it said, well, in this services versus goods case, well, they are sufficiently related. There's no case that every services versus goods scenario where this court has looked at similar cases, the court has held that the uses were unrelated. Please look to... Are these mostly factual findings that the board's making? It did look to... But it actually made erroneous factual findings, nonetheless, if I understood your question. But... Is there a legal error here, other than erroneous factual findings? Is there a legal error? Well, yes. Your Honor, if you would look to the cases of Shinn Manufacturing, In-Ray Coors, Jacobs, Steve's Ice Cream, all of these cases looked at services versus goods cases, all of them held, well, services were not sufficiently related to goods to hold that they were related in. So you're saying that per se, goods and services can never be sufficiently related? Almost. Let me read this from... Aren't these both goods, though? I mean, you've got a ceramic pot and you've got a handbag. Your Honor, please refer back to their registration itself. The registration says it has a mark for services, where it supplies goods and services for a customer to use. And if you look in the services versus goods cases in the... But in your case, if you take the handbags out of the equation, you're out of business. I mean, you're providing a good. Correct. And CMM Enterprises supplies a place for the customers to paint pottery. And the pot, and they supply the paint and the ceramic figurine. Correct. But in the line of restaurants versus foods, well, restaurants supply food. That's exactly what restaurants do. And nonetheless, in the line of restaurants versus food cases, the court held that there was not a sufficient relationship. And the Shin Manufacturing case in 2005, a federal circuit case, the court held, quote, and that was in a cooking classes versus kitchen textile goods scenario. In that case, the court said, cooking classes are not the same type of product as kitchen textiles. One is a service, and the other is a tangible good. It would be more accurate to say that cooking classes are in the same category as language or pottery classes. So if here, we had a service where there were coloring bags, perhaps it would be more related. Or if even, if there was more overlap... Suppose it were, one registration were for those would be pretty related, right? I would say so. And if you look again at the restaurant services versus foods cases, in those cases, the commonality is that the restaurant sold one of the items on the menu was a food that was offered by the other party. And perhaps if the only food sold by the restaurant was the exact food sold by the opposing party, then perhaps the court might have changed their opinion. But, as I've mentioned, in those cases, the cases that have been established... But the point is, there can't be an absolute rule that because one is registration for perhaps not, but I would suggest there would have to be substantial overlap. And, for instance, if southern states' goods were ceramics, then perhaps it would change the outcome. However, it's not. It's fabric bags and markers, products that would never and are not, have nothing to do with CMM Enterprises Services. Ms. Herring, do you want to say some rebuttal time? You're about halfway through. Do you want to say anything? I will. Thank you. Mr. Brundis. Please, the court. Good morning. Bruce Brundis, the dean of Brundig Yard and Brucker on behalf of APLE, CMM Enterprises Inc. It's our position in the matter that the TTAB clearly made the proper decision of finding likelihood of confusion and sustaining the opposition, and that its facts in the record. As the court's noted in this case, the marks are identical. The only two companies that are ever shown to have used these two marks, this mark, are the two parties here. Color Me Mind's been in the business for 20 years. We also believe that the goods and services are closely related. Southern States Marketing sells craft activity products of a particular type. Color Me Mind sells craft activity services and craft activity products. They're not identical, but they're both closely related. They're both, as the court has noted, sort of a paint your own or make your own type of a product. The mediums are a little different that they're using. What's applied to it, paints or markers, are a little bit different, but we think that cuts a little too fine. The evidence shows that companies such as Southern States Marketing that are in the craft activity field sell a variety of craft activity products. It also shows that companies that are in the business of selling craft activity products sell a variety of different craft activity products. We think it cuts too fine to try to distinguish between specific mediums that are used or the manner in which they are customized, if you will. How do you hold yourself out in the marketplace? Is it as a place to come and paint a pot or come and paint a pot? Sorry, come and paint a pot or a place to come and paint a pot? Yeah, or a place. I mean, are you providing space or are you providing in the ultimate in a figure in? How do you hold yourself out? Well, I'm not sure I understand the distinction, but what we marketed as a place where people can come and they can do these various craft activities as a family, as individuals, as groups. It's an activity center, if you will. They can purchase various types of figurines, anything from Tinker Bell to plates and mugs, and they can decorate them as they wish and go have that experience. So if Sutter States doesn't hold itself out as an activity center, I mean, the only thing they do is sell you the bag and the markers, how can there be confusion? Well, we don't simply only do activities at the studio. The record's clear that we also provide takeout kits and sponsor these activities at scout organizations, church organizations, various other location, locales, where these parties and activities are engaged in. So I think it's not simply the particular location, it's multiple locations, and it's not simply services, it's products as well. And these products and services are uniquely of a paint-your-own nature, which is the same basic nature as their products. Do you ever just sell the kits alone? Yes, yes. Those two kits or... The record is clear, we sell take-to-go kits that people can pick up and take and have a party wherever they wish. Strength of the mark, we believe that the evidence is that the mark is strong. We think there's a fundamental misconception that appears in the appellant's brief when they seem to suggest that because the TTAB made a determination that the mark was not famous, that the mark is not strong, and they seem to have equated the two, and we believe that's simply incorrect. A mark may not be famous for dilution purposes, but still may be strong for purposes of likelihood of confusion. Do you win even if we don't agree with you concerning the strength of the mark? I believe so, because in this case, the identity of the marks and other factors here, such as the demographics of the users and the commercial strength of the mark, I mean, I think what your Honor is referring to is a conceptual strength of the mark. Our view on that is that there are terms in our mark that are suggestive of the goods and services that it's three separate terms that literally don't make a lot of sense together. It's maybe suggestion upon suggestion, if you will, and I think that makes it less suggestive in combination. I think that conceptually the mark is somewhere between suggestive and arbitrary in that range, but to suggest that the combination of marks itself is a weak term, I think is incorrect. From a commercial standpoint... How many other businesses are out there that use Color Me? Is there something like Color Me You? We don't know. There is the third party evidence that's been submitted is primarily listings from the TTAB database, from Donna Bradstreet, from telephone books. I ask that because I think, to me, the evidence is pretty weak on the fame of the mark. Well, I think the evidence shows that there's a hundred stores. They have substantial sales, that there's a very highly popular website, and I think most useful of this evidence is only unsolicited publicity that they've gotten in magazines, newspapers, the New York Times, People magazine. Their studios have been a venue for TV shows, movies. There's a lot of unsolicited publicity that the Color Me Mine business has gotten. Unsolicited? Unsolicited, yes, and I think that's a key term because in some cases you can take advertising and there's a certain value of paid advertising, but this type of media is I think sometimes called earned media, where people will come to you to use your studios. People will come to you for articles and that has a higher value in terms of fame than simply advertising because advertising is self-serving. It's taken by the party using the mark to try to promote it, whereas earned media is not something that the person using the mark has solicited it and it therefore has a higher degree of credibility. So I think that all of that activity tends to show the commercial strength of the mark is quite substantial. It's really very rare, I believe, for a company to have that amount of unsolicited or earned media in relation to its business. There's some arguments I want to address in relation to the strength of the mark. For one, Southern States argues that the mark is not strong because of the third party uses. There's several points to that. One, that the evidence of third party uses I've indicated is unsubstantiated. The cases indicate that when you talk about third party uses, the real underlying question is has, as a consequence of such third party use, undercut the unique trade identity under the mark? And we don't have any evidence of that. All we have is listings. Yeah, yeah, yeah. But, for example, in Lloyd's we held that White Page's listings are pertinent. I mean, they have some evidence of third party usage, just not of Color Me Mine. It's of the Color Me part of it. I agree. That's the key point to begin with is that none of the uses are for the same mark. And what usage that is is not clear from the record we have in the case. Additionally, I think it's a useful point to note that the cases that talk about third party uses and affecting the strength of the mark are typically the kind of cases where the marks are not identical and the marks are similar and the pertinence of the third party uses is to show the relative significance of the differentiating term, that customers have come to differentiate between various uses of a derivative mark because of all of these third party uses. What could we reverse and then have the board grant the application for goods since you have one for services? What could? Yeah, why could we not do that or why shouldn't we do that? Well, I know why we shouldn't. I know why you think we shouldn't, but... What circumstances would allow for that? Is that the question? Yeah, I mean, you registered as a service. Your registration says that you provide yourself a do-it-yourself ceramic studio. Right. They're selling a good. Well, we have, in addition to the registration, we have evidence that the court referred to or the board referred to of underlying use. There's some argument that's made that we're not allowed to rely upon anything other than what's in our registration. We think that's an incorrect argument. Section 2D talks about uses of trademark... Because you registered yourself as providing a service... That's correct. ...and basically as having a place to hold parties. Yes. And they don't hold parties. That's correct. They sell bags with markers. Yes. Why can't the two marks coexist, you as a service and they as a good? Well, first of all, we do sell goods as well, and we indicated that in the notice of opposition that we use a mark in relation to a variety of goods and services. There needn't even be a registration for an opposition, so I think that's a point. But if they were going to sell craft activity products that were not of a paint-your-own nature, to answer your question, Your Honor, I think that would be something that would move them further downstream from us and might be a sufficient basis to say that the two can coexist. But as a Color Me Mine is a franchise business, their uniqueness, their trade identity is what they license. As in most franchises, your highest value is your trademark. It's not necessarily the burgers that you sell, it's those golden arches that you can use. And here their trademark is their bread and butter. And it's something that they've nurtured for 20 years and when someone starts to use it in a closely related type of activity product, it's a problem. And I think it will certainly damage their goodwill and trade identity, dilute it significantly. But as I was mentioning with respect to the third-party uses here, this is not a case where the marks are similar and there's some question that the relative significance of the common and different terms, and that's where these third-party cases generally apply. They've also referenced disclaimers as well, and again, the disclaimer cases have to do with situations where the marks are similar but not identical and the disclaimer has to go with trying to balance as to whether or not the distinct parts of the mark are more significant than the disclaimed portions of the mark so that the two marks are distinguishable. Neither of those whole arguments really have application in relation to situations where we have identical marks. Customer bases are very similar if not identical. Color me mine is women 18 to 54, children under 12. Southern states, women 25 and up and children 5 to 11. So again, the demographics are very similar, the marks are identical, there's this commercial strength to the mark that exists as well. The channels of trade issue, the channels of trade as presently utilized are somewhat distinct in ways, I grant you that. The point that the TTAB made, and I think it's common law, is that where the sales of the channels of trade are not limited by some statement in the registration, they can be open-ended into all the normal channels of trade into which such types of goods or services are offered. And to sell products for painting your own ceramics, those channels of trade certainly include trade stores, arts and crafts stores, such as where they sell their products. A.C. Moore's, Michael's, those are stores where craft activity products are sold and we sell craft activity products. So it certainly has the potential for overlap if it doesn't overlap at this point in time. The sales conditions, the TTAB again had record evidence to support that the customers are not sophisticated, the products and services are inexpensive to moderate price and that the customers for southern states products at big box stores are particularly likely to be more impulse buyers. Southern states focuses on the customers for Color Me Mine studio services and says they're not likely to be confused, but doesn't talk about how the customers for their own products are more impulse buyers. And I think it can be either way. It doesn't have to be both parties. Either way, being susceptible to impulse buyers makes that a concern for likelihood of confusion. The actual confusion issue, as the court noted, that their misdirected phone call is an instance of actual confusion. They may be mitigating factors in it, but it is, as the board indicated, it at least shows the potential for confusion, so it's pertinent. Two other quick points here. One, the reply brief for the first time, they've argued that the sale of goods must predate adoption by southern states marketing. Two points on that. One, procedurally it's untimely, and anything that's raised in a reply brief is not proper for consideration. The court has indicated that in a number of cases, such as the Hyannix Semiconductor case, the Rambus 645, You don't have to cite cases, just state your final points. And another one would be SmithKline-Beckman v. Apotex. Your time has expired, so if you have one quick point, please make it. I'll wrap up then, unless there's any further questions. Thank you, Mr. Brunson. Ms. Herron has a little more than two minutes to rebut. The bottom line here is that CMM Enterprises has chosen a highly suggestive mark. It is plainly derived from its business. Its customers will color items that will belong to them. It is an inherently weaker mark, according to the law, period. They have not been able to overcome the weakness of the suggestiveness of their name by any means. They suggest that, well, commercially we've overcome that. However, they cannot establish that their mark is famous. Because they can't establish that their mark is famous, and the Trademark Trial and Appeal Board recognized their mark cannot be considered famous, it cannot be considered a strong mark. Rather, it's an inherently weaker mark. With regard to channels of trade, again, CMM Enterprises' services and Southern States' products will never be sold in the same store or in the same venue. Why do you say never? Because their services... Actually, and this is recognized factually by the Trademark Trial and Appeal Board, but their services emanate from their studios. First look to their registration. The registration says, we provide a studio for the painting of pottery. Can't they stop selling objects, products related to the business? Like a kiosk in the middle of the mall and sell the go-to kits? Well, and then that would move their place, perhaps, to somewhere else. But there's no evidence they've ever done that, that they've ever sold it in a different place. But that doesn't mean never. I'm just questioning your own statement. Your Honor, but there's no evidence they would ever sell in a place like Southern States, maybe presumed to sell their products anywhere where their items are sold. There's just no evidence of that. But, Your Honor, the law says that you should look to the registration for what the registration is, what they've registered for. They've registered for a studio where customers will paint pottery. A studio is defined by Merriam-Webster's is a place where a painter or sculptor or photographer will conduct his work. They've registered for a place. Suppose they've registered a studio to paint things on purses.  Purses. On purses. I think I'd perhaps have more trouble. You'd lose, right? Well, there's more overlap, and I would say that would be significant overlap. But that's certainly not what they do, have ever done, and there's no indication that they would ever do. Your Honor, I still haven't heard from CMM Enterprises. There was one case for relatedness that supports their position, that their services are related to Southern States Good. Rather, I've pointed out the Shin Manufacturing case, Jacobs, N. Ray Coors, Mr. Hero's Sandwiches. All of these cases involve services versus goods in all health. There was unrelatedness or not sufficient relatedness in a commercial sense. Thank you, Ms. Heron. We understand your case.  Thank you, Your Honor. Thank you. All rise. Your Honor, the court is adjourned from day six.